UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dmitry Pronin, # 06763-015, | ) C/A No. 5:13-3423-DCN-KDW |
| Plaintiff, | ) |
| vs. | ) |
| Scott Duffey; | ) |
| Veronica Hnat; | ) |
| Caroll Bollinger; | ) |
| Kevin Klimko; | ) |
| James W. Johnson; | ) |
| Kahle Vining; | ) REPORT AND RECOMMENDATION |
| Daniel Fallen; | ) (partial summary dismissal) |
| Jerome Brooks; | ) |
| Sandra K. Lathrop; | ) |
| John Bryant; | ) |
| Sherilyn L. Cheek; | ) |
| Dewick Bryant; | ) |
| Troy Johnson; | ) |
| Charles Collie; | ) |
| Michelle Picerno; | ) |
| Jordan Hollett; | ) |
| William Reese; | ) |
| John Doe Officer #1; | ) |
| John Doe Officer #2; | ) |
| Tony Thompson; | ) |
| Starklen Smith; | ) |
| Paul Wellman; | ) |
| Daniel Trent; | ) |
| Eda Negron-Oliver; | ) |
| Phillip Coleman; | ) |
| Philip Robertson; | ) |
| Raymond Kelso; | ) |
| William Johnson; | ) |
| James Reid; | ) |
| Nichols; | ) |
| Dwight Ratley; | ) |
| Randolph Middlebrook; | ) |
| Arunava Saga; | ) |
| Chad Tolbert; | ) |
| Brandon Burkett; | ) |
| Jerry Harriott, Jr., | ) |
| Defendants. | ) |
| _____ | ) |

This is a civil action filed pro se by a federal prison inmate currently confined in a local detention center in Towson, Maryland. Pursuant to 28 U.S.C. §636(b)(1), and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such

pro se cases and to submit findings and recommendations to the district court. 28 U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

I.    Factual Background

Dmitry Pronin ("Plaintiff") was formerly a federal inmate at FCI-Edgefield ("Edgefield") in Edgefield, South Carolina. In the Complaint submitted in this case,[1] he alleges that his federal constitutional rights were violated by many members of the staff at Edgefield through their alleged failure to protect him from violence from violence by fellow inmates and from unconstitutional conditions of confinement, medical indifference, use of excessive force, religious discrimination, and retention of untrue negative information in his prison files. Compl. 10-13, 14-16, 17-18, 20-22, 24-25, 26-27, ECF No. 1. Plaintiff also asserts that Defendant Kelso, a Federal Bureau of Prisons ("BOP") disciplinary hearing officer ("DHO") stationed in Atlanta, Georgia, violated BOP policy and his due process rights by improperly convicting Plaintiff of a disciplinary violation. The disciplinary conviction resulted in lost good-time credits and in the loss of certain privileges. *Id*. at 25. Further, Plaintiff alleges that several federal and state law enforcement officers from Baltimore, Maryland violated his "*Miranda*"[2] rights to counsel and due process rights by interrogating him on September 21, 2011 about another crime while he was being temporarily detained in Maryland to address separate criminal charges. *Id*. at 18. Plaintiff also alleges that the same constitutional rights were violated again on January 29, 2013, when two of the Maryland officers (Defendants Duffey and Bollinger) went to Edgefield and

---

[1] Plaintiff originally filed his Complaint in the United States District Court for the Southern District of Indiana when he was incarcerated at USP-Terre Haute, a federal prison in that district. The case was transferred to this court by order of United States District Judge Jane Magnus-Stinson dated December 6, 2013. ECF No. 6.

interrogated him again. Plaintiff alleges that he was told that one of the Edgefield corrections officers wanted to see him and that, after he was placed in handcuffs, he was escorted by a prison guard to the SHU Lieutenant's office, where he found Defendants Duffey and Bollinger along with the Lieutenant. *Id*. at 20. Plaintiff alleges that the Lieutenant quickly left the room and that Duffey and Bollinger attempted to interrogate him in a threatening manner for over ten minutes despite his telling them that he was represented by counsel in Maryland and asking them to stop questioning him. *Id*. at 19-20. Finally, Plaintiff alleges that his Fifth, Eighth, and Fourteenth Amendment rights were violated by two employees at FCI-Ray Brook in New York state, where he was housed before being transferred to Edgefield, when they refused to remove an allegedly improper "sex offender public safety factor" notation from his prison records even though, according to Plaintiff, he was never convicted of a sex crime. *Id*. at 23.

Insofar as the allegations against the Maryland law enforcement officials are concerned, Plaintiff alleges Defendants Duffey, Hnat, Klimko, James Johnson, and Bollinger ("the Maryland Defendants") used threatening and accusatory language while trying to get him to confess to murdering his mother. *Id*. at 18-20. He alleges that all of them used these confrontational interrogation methods on him in Baltimore, Maryland, and that two of them (Defendants Bollinger and Duffey) also went to Edgefield and used the same interrogation methods there. *Id*. According to Plaintiff, these Defendants would not stop questioning him even though he told them several times that he was represented by counsel and that they should be speaking with that attorney and not him. *Id*. at 20. He alleges that both interrogations concluded approximately "ten minutes" after Plaintiff protested about his attorney, but not before the officers threatened him with the death penalty and harsh punishment for his mother's death. *Id*.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

at 19-20. Plaintiff does not allege physical force was used against him by any Defendant during the interrogations, and Plaintiff does not allege that he made any incriminating statements during either interrogation. Instead, Plaintiff claims that his constitutional rights under the Fifth and Fourteenth Amendments were violated by the fact that he was harshly interrogated without his attorney being present about a separate crime while incarcerated on a sentence for a different crime. *Id*. at 18.

Regarding the alleged retention of allegedly false information in his prison records, Plaintiff avers his prison records from his incarceration in New York "unlawfully kept [sex offender] public safety factor" on Plaintiff's "inmate record/Team Paperwork." *Id*. at 23. Plaintiff submits he first became aware this allegedly false information was contained in his records and of his rights concerning his records while incarcerated at FCI-Ray Brook ("Ray Brook") in New York during July 2013. *Id.* He states that he asked Defendants Picerno and Nichols, both Ray Brook employees, to "look into the matter," but he alleges that his requests were ignored and the records were not corrected before he was transferred to Edgefield, where they remained in the same allegedly incorrect state. *Id*. at 24. Plaintiff alleges that the extra "custody points" arising from these incorrect records resulted in a "miscalculation of custody points," but that Defendants Cheek and Brooks, Edgefield employees, also refused his requests for correction of his records. *Id*.  Plaintiff seeks compensatory and punitive damages from each Defendant. *Id*. at 31. He also seeks injunctive and declaratory relief against several Defendants. ECF No. 1-7.

II.     Standard of Review

Under established local procedure in this judicial district, a careful review has been made

4

of Plaintiff's pro se Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F. 3d 630, 630n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to partial summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B) as to Defendants Duffey, Hnat, Klimko, James Johnson, and Bollinger ("the Maryland Defendants"), Picerno, Nichols ("the New York Defendants"), and Kelso ("the Georgia Defendant").

III.    Analysis

   A. The Maryland Defendants

Because some of the Maryland Defendants are state or local officers and some are federal

5

officers, Plaintiff's assertions of constitutional violations by these persons fall under both 42 U.S.C. § 1983 and the *Bivens* Doctrine. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 731-32 (1989). The purpose of § 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted) (emphasis added). The *Bivens* Doctrine establishes a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. The doctrine developed to address constitutional violations by federal officials who cannot be sued under § 1983 because they do not act under color of *state* law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814-20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and *vice versa*. *Farmer v. Brennan*, 511 U.S. 825, 833-42 (1994)(*Bivens* case applying § 1983 cases throughout); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443-44 (4th Cir. 1988).

A bedrock requirement in any action under either § 1983 and the *Bivens* Doctrine is that the district court in which a complaint is brought shall have personal jurisdiction over the persons of the defendants. *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (*Bivens* case holding the state of Nevada lacked personal jurisdiction over deputized DEA agent in Georgia). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). A federal district court's authority to assert personal

jurisdiction in most cases is linked to service of process on a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). The Fourteenth Amendment's Due Process Clause requires that the nonresident have "certain minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The inquiry into the "minimum contacts" necessary to create specific jurisdiction focuses "'on the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting from *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). For a state (or a federal district court within that state) to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the "defendant *himself*" creates with the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original), and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there. *See Int'l Shoe*, 326 U.S. at 319. The plaintiff cannot be the only link between the defendant and the forum. These same principles apply when intentional torts are involved. *See Calder v. Jones*, 465 U.S. 783, 789 (1984).

Rule 4(e) Federal Rules of Civil Procedure ("Serving an Individual Within a Judicial District of the United States") allows application of so-called state "long-arm" statutes in federal district courts in serving individuals outside of the District of South Carolina. Fed. R. Civ. P. 4(e)(1) (noting service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"). Under South Carolina law, nonresidents may be served and subjected to state court jurisdiction under the provisions of S.C. Code Ann. § 36-2-803.[3]

---

[3] South Carolina's long-arm statute provides:
(A) A court may exercise personal jurisdiction over a person who acts directly or by an

7

Comparison of the list of activities or contacts that may subject a non-resident to personal jurisdiction under South Carolina's long-arm statute with the Complaint and the proposed service documents submitted in this case demonstrates that, without considering the relative merits of Plaintiff's substantive claims against them—the court cannot exercise personal jurisdiction over Defendants Duffey, Hnat, Klimko, James Johnson, or Bollinger insofar as their 2011 Baltimore, Maryland interrogation of Plaintiff is concerned. These residents of Maryland did nothing during that interrogation in Maryland that would lead them to expect to be brought into a federal or state court in South Carolina to respond to claims against them based on that interrogation. Everything that took place during that period of interrogation took place within the geographical confines of the State of Maryland and did not result in any kind of damage to anyone or anything in South Carolina. Accordingly, Plaintiff's Complaint should be partially summarily dismissed insofar as it seeks to hold Defendants Duffey, Hnat, Klimko, James Johnson, and Bollinger liable for any form of relief based on their interrogation of Plaintiff while he was in Baltimore, Maryland in September

---

agent as to a cause of action arising from the person's:
  (1) transacting any business in this State;
  (2) contracting to supply services or things in the State;
  (3) commission of a tortious act in whole or in part in this State;
  (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
  (5) having an interest in, using, or possessing real property in this State;
  (6) contracting to insure any person, property, or risk located within this State at the time of contracting;
  (7) entry into a contract to be performed in whole or in part by either party in this State; or
  (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.
(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

2011.

Furthermore, assuming without deciding that this court could exercise personal jurisdiction over Defendants Duffey and Bollinger based on the January 2013 Edgefield interrogation, insofar as it seeks to hold them liable for damages and other relief based on their actions during the interrogation, the Complaint should be partially summarily dismissed for failure to state a claim upon which relief may be granted. Plaintiff asserts that Defendants Duffey and Bollinger violated his "*Miranda*" rights and the Fifth and Fourteenth Amendments because they continued to question him in an office at Edgefield after he told them to stop and reminded them that he had an attorney from Maryland representing him. Compl. 19-20, ECF No. 1.

The United States Supreme Court has held that there is "no categorical rule" that a *Miranda* violation, which requires a "custodial" interrogation, occurs when a prisoner is removed from the general population and taken to another location for questioning by outside law enforcement about a different crime than the one on which his conviction is based. *See Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (no evidence of coercion that would support a finding of "custodial interrogation" in five-to-seven hours of questioning by armed officers using "sharp tone" in a "well-lit, average-sized conference room;" no physical restraint of prisoner). In *Howes*, the Court held that "[w]hen a prisoner is questioned, the determination of custody should focus on all of the features of the interrogation. These include the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id*. at 1192 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664-65 (2004)); *see also Maryland v. Shatzer*, 559 U.S. 98, 110-15 (2010) (significant break in custody after initial *Miranda* rights given permits re-interrogation of prisoner without presence of counsel despite prisoner's request for counsel

---

S.C. Code Ann. § 36-2-803.

during initial interrogation). It has also been held that "in the prison context, custody for *Miranda* purposes is not present unless there exists a 'measure of compulsion' or 'restrictions on [the suspect's freedom] over and above ordinary prison confinement.'" *Georgison v. Donelli*, 588 F.3d 145, 157 (2d Cir. 2009) (no *Miranda* rights required; interrogation in prison visiting room that prisoner entered and left voluntarily though escorted by corrections officers). Finally, it has been held that to state a § 1983 claim for a deprivation of civil rights during a police interrogation, a plaintiff must show "[m]isconduct that a reasonable person would find so beyond the norm of proper police procedure as to shock the conscience, and that is calculated to induce not merely momentary fear or anxiety, but severe mental suffering, in the plaintiff." *Wilkins v. May*, 872 F.2d 190, 195 (7th Cir. 1989) (question of fact as to whether interrogation at gunpoint was constitutional violation).

Additionally, regarding the type of activities that could expose state actors to liability for damages under § 1983 (or *Bivens*), it is well established that allegations of verbal harassment, without more, is not actionable under § 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986). At least one federal appeals court has held that "the use of vile and abusive language is never a basis for a civil rights action." *Grandstaff v. City of Borger*, 767 F.2d 161, 172 (5th Cir. 1985) (no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish; no liability under § 1983 for such claims); *see also Emmons v. McLaughlin*, 874 F.2d 351, 354 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); *Cameron v. Bonney*, No. 12-7836, 2013 WL 1800423 (4th Cir. Apr. 30, 2013) (same).

Plaintiff's allegations about the attempted interrogation by Defendants Duffey and

Bollinger in the SHU Lieutenant's office at Edgefield do not state a plausible § 1983 or *Bivens* claim because there are no facts alleged showing any type of coercive or otherwise unconstitutional activity by these law enforcement officers during the relatively brief (approximately ten minute) meeting with Plaintiff. First, there was no presumption of a "custodial interrogation" requiring full *Miranda* protections during the Edgefield encounter based on Plaintiff's initial request for an attorney during the Baltimore questioning because there was the requisite break in custody discussed in *Maryland v. Shatzer*. *See* 559 U.S. at 110.[4] Second, the facts alleged about the attempted Edgefield interrogation do not show any type of coercion or compulsion employed against Plaintiff by either Defendant Duffey or Defendant Bollinger during the brief period in which Plaintiff was in their presence. Plaintiff's own allegations show that he was permitted to leave the room after approximately ten minutes without making any kind of statement to the Defendants other than to tell them he wanted them to speak with his Maryland attorney instead of him. Compl. 20, ECF No. 1. Moreover, there are no allegations of any type of physical force used on Plaintiff during the encounter, and the allegations about Defendants' use of verbal threats and harsh accusations of wrongdoing against Plaintiff do not show any unconstitutional behavior on Defendants' parts. *See Emmons*, 874 F. 2d at 354; *Percell*, 790 F.2d at 265.

There are no facts alleged from which it could be inferred or determined that Defendants Duffey or Bollinger did anything in South Carolina that was "so beyond the norm of proper police procedure as to shock the conscience" or that "was calculated to induce not merely momentary fear or anxiety, but severe mental suffering, in the plaintiff." *Wilkins*, 872 F.2d at 195. Because

---

[4] Plaintiff states that the interrogation in Baltimore was conducted on September 21, 2011, Compl. 18, ECF No. 1, and that the subsequent attempted interrogation at Edgefield took place on January

Plaintiff's alleged facts do not state a plausible Fifth, Sixth, or Fourteenth Amendment violation claim pursuant to § 1983 or *Bivens* against either Defendant Duffey or Bollinger arising from their minimal interrogation activities at Edgefield, the Complaint should be partially summarily dismissed against these two Defendants insofar as it concerns the attempted interrogation of Plaintiff there.

### B. The New York Defendants

The Complaint should also be partially summarily dismissed as to Defendants Picerno and Nichols because there are no facts alleged against them that would support the exercise of personal jurisdiction over them by this court. *See* S.C. Code Ann. § 36-2-803; Fed. R. Civ. P. 4(e); *see also Walden v. Fiore*, 134 S. Ct. at 1121; *Int'l Shoe*, 326 U.S. at 316. The only allegations against these two residents of the State of New York are that they allowed certain allegedly false information to remain in Plaintiff's prison files while Plaintiff was incarcerated at a federal prison in New York. Compl. 23, ECF No. 1. Everything that Plaintiff alleges against them took place in New York and there are no facts alleged showing that these Defendants had any kind of contact with the State of South Carolina that would permit this court to exercise personal jurisdiction over either Picerno or Nichols. Accordingly, the Complaint should be partially summarily dismissed as to Defendants Picerno and Nichols.

### C. The Georgia Defendant

Plaintiff alleges that Defendant Kelso, a DHO employed by the BOP and stationed in Atlanta, Georgia, conducted a disciplinary violation hearing at Edgefield through video-conference from his location in Georgia. Compl. 25, ECF No. 1. Plaintiff further alleges that Kelso violated his Fifth Amendment rights and BOP policy when he convicted Plaintiff of the disciplinary charge

29, 2013. *Id*. at 19.

of fighting, but did not convict the other inmate with whom Plaintiff fought. *Id*. Plaintiff states that he was penalized by the conviction with loss of good-time credits and loss of other privileges such as telephone and commissary. *Id*. Plaintiff does not allege that this disciplinary conviction was ever reversed or otherwise invalidated.

Plaintiff fails to state a plausible *Bivens* claim against Defendant Kelso because his requests for relief are barred until such time as the conviction is overturned or set aside. This is true because the taking of good-time credits necessarily affected the length of Plaintiff's federal prison sentence, and his allegations of wrongful conviction, if true, would invalidate the disciplinary conviction. With regard to civil actions seeking damages or other relief based on allegations that constitutional violations occurred during legal proceedings that resulted in incarceration or continued or extended incarceration of the plaintiff, the United States Supreme Court stated:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Thus, *Heck* bars a prisoner's claim for damages under *Bivens* or § 1983 when success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been successfully challenged. *Id*.

*Heck's* ruling was extended to a state prisoner's claim for damages regarding a disciplinary proceeding in *Edwards v. Balisok*, 520 U.S. 641 (1997). As in the instant action, the plaintiff in *Edwards* alleged that the procedures used in and the result of a prison disciplinary hearing violated

13

his due process rights. The plaintiff in *Edwards* was penalized with the loss of thirty days of good-time credit. 520 U.S. at 643. The United States Supreme Court held that the Ninth Circuit Court of Appeals, which had found that § 1983 could be used to impose liability for the alleged due process violations, disregarded "the possibility, clearly envisioned by *Heck,* that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Edwards*, 520 U.S. at 645. The Court concluded "that [the plaintiff's] claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 648. *Heck* is also applicable in *Bivens* actions. *See Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001); *Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996); *see also Morrison v. Holding*, 539 F. App'x 272, 273 (4th Cir. 2013).

      Since the *Edwards* decision, the United States Supreme Court has limited the holding in *Heck v. Humphrey* in cases involving prison disciplinary proceedings. In *Muhammad v. Close*, 540 U.S. 749 (2004), the Court clarified that *Heck* does not apply "categorically to all suits challenging prison disciplinary proceedings" and further stated "these administrative determinations do not as such raise any implication about the validity of the underlying conviction, and although they may affect the duration of time to be served (by bearing on the award or revocation of good-time credits) that is not necessarily so." *Muhammad*, 540 U.S. at 754. In *Muhammad*, the plaintiff brought a § 1983 action challenging a pre-hearing lockup and a correction officer's alleged threatening behavior. Unlike Plaintiff in the case now under review, the plaintiff in *Muhammad* requested only monetary relief and did not specifically ask the court to vacate his disciplinary conviction. The *Muhammad* Court stated that the trial court judge "found or assumed that no

good-time credits were eliminated by the prehearing action Muhammad called in question." *Muhammad*, 540 U.S. at 754. The Court stated:

> His § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence. That is, he raised no claim on which habeas relief could have been granted on any recognized theory, with the consequence that *Heck's* favorable termination requirement was inapplicable.

*Id.* at 754, 755.

In the present action, unlike in *Muhammad*, the challenged disciplinary proceeding *did* result in the loss of good time credits. Accordingly, if this court were to enter a judgment in Plaintiff's favor in his *Bivens* claim against Defendant Kelso, it would be required to restore his good-time credits and not simply award damages. Such a judgment and the corresponding grant of relief could, therefore, be construed as a judgment at odds with the "[BOP's] calculation of time to be served in accordance with [Plaintiff's] underlying sentence." *Id.* This is true because the good-time credits, whether taken by the disciplinary officer or restored by this or some other court, would change the amount of time that Plaintiff stayed in prison either positively or negatively. Additionally, Plaintiff could choose to challenge his loss of good time credits via a habeas action under 28 U.S.C. § 2241.

In another more recent Supreme Court case, *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Court addressed the "legal journey" through the habeas/§ 1983 quagmire stating:

> [T]he Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody.

15

*Wilkinson,* 544 U.S. at 81 (emphasis in original). The Court further stated that the *Preiser, Heck, Edwards* line of cases,

> taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id.* at 81, 82 (emphasis in original). Thus, while *Heck* does not universally apply to act as a bar to all suits challenging prison disciplinary proceedings or institutional offense convictions, it does apply to situations such as Plaintiff's—that is, situations in which the administrative action affected credits toward release based on good time served. Because *Heck* applies in the instant circumstance and Plaintiff has not shown that his disciplinary violation conviction and sentence have been invalidated, his *Bivens* claim against Defendant Kelso based on an allegedly illegal disciplinary violation conviction and related matters is barred at this time. The Complaint should be partially summarily dismissed as to Defendant Kelso.

IV. Conclusion

Accordingly, it is recommended that the district court partially dismiss the Complaint in this case *without prejudice* as to Defendants Duffey, Hnat, James Johnson, Bollinger, Klimko, Picerno, Nichols, and Kelso. *See Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal). The Complaint should be served on the remaining Defendants.

IT IS SO RECOMMENDED.

*[Signature: Kaymani D. West]*

June 2, 2014                                                                                       Kaymani D. West
Florence, South Carolina                                                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).