# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Dmitry Pronin, | ) | C/A No. 5:13-03423-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Kahle Vining, Jerome Brooks, Sandra K Lathrop, | ) | Report and Recommendation |
| John Bryant, Sherilyn L. Cheek, Dewick Bryant, | ) | |
| Troy Johnson, Charles Collie, Jordan Hollett, | ) | |
| William Reese, Tony Thompson, Starklen Smith, | ) | |
| Paul Wellman, Daniel Trent, Eda Negron-Oliver, | ) | |
| Phillip Coleman, Phillip Robertson, William | ) | |
| Johnson, James Reid, Dwight Ratley, Randolph | ) | |
| Middlebrook, Chad Tolbert, Brandon Burkett, Jerry | ) | |
| Harriott, Jr., John Doe Officer #1, John Doe | ) | |
| Officer #2, and Arunava Saga, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a pro se prisoner, brings this action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). This matter is before the court on Defendants' Motion for Summary Judgment, filed on March 2, 2015. ECF No. 117. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff on March 2, 2015, of the dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. ECF No. 118. On March 10, 2015, Plaintiff filed a Response in Opposition to Defendants' Motion, ECF No. 122, and on March 20, 2015, Defendants filed a Reply, ECF No. 125.[1] This Motion is now ripe for consideration.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C, which provides for all pretrial proceedings in certain types of matters be referred to a United States

I.     Background

Dmitry Pronin ("Plaintiff") is presently confined in the Baltimore County Detention Center in Towson, Maryland. Plaintiff was formerly a federal inmate at FCI-Edgefield ("Edgefield") in Edgefield, South Carolina. In his Complaint, Plaintiff alleges ten claims against multiple defendants.[2] ECF No. 1. In his first cause of action, Plaintiff alleges the FBI has put fraudulent information about him on the internet indicating he married his former wife "solely for the purpose of obtaining a green card," which Plaintiff claims is a lie and libelous. *Id.* at 10. Plaintiff maintains that he found out about the internet information on November 1, 2011, and became "objectively aware of a violation of his 'Lamps Lights Laws' rights under 1st Amendment of Constitution on October 27, 2013." *Id.*

In his second claim, Plaintiff alleges that his cellmate, Larry Burns, raped him on July 15, 2012. *Id.* at 10-13. Plaintiff alleges that he submitted a request to staff member form on May 18, 2012 where he explained to correctional officers "the situations with Burns drug abuse, threats, sexually charged language, asking Dewick Bryant and John Bryant to interfere and further, to move [him] out of the cell with Burns[, but] both requests were ignored." *Id.* at 11. Plaintiff alleges that on June 5, 2012, he filed a request with Captain Charles Collie stating he explained that he had "information about the drug trade on the compound," and about Inmate Burns using illegal drugs, but Collie ignored his request. *Id.* at 12. Additionally, Plaintiff maintains that Inmate Burns purchased drugs from Sandra K Lathrop. *Id.* After he

---

Magistrate Judge. Because Defendants' Motion is dispositive, the undersigned enters this Report for the district judge's consideration.

[2] Plaintiff's Complaint against Scott Duffey, Veronica Hnat, Raymond Kelso, Kevin Klimko, James Johnson, Caroll Bollinger, Michelle Picerno, and Mr. Nichols was dismissed for want of personal jurisdiction. *See* ECF Nos. 36, 69. His Complaint against Duffey, Bollinger, and Raymond Kelso was dismissed for failure to state a claim as well. *Id.* These individuals were never served. *See id.*

was allegedly raped, Plaintiff maintains that he and Inmate Burns were both placed in the Special Housing Unit ("SHU"). *Id.* at 13.

In his third claim, Plaintiff alleges that on May 5, 2013, he was unlawfully moved into an observation room where he remained until May 8, 2013. *Id.* at 13. While in observation, Plaintiff alleges he endured "extreme and torturous conditions" including lack of drinking water or a flushable toilet. *Id.* Additionally, Plaintiff maintains that he was treated unequally and unlike other inmates, a Fourteenth Amendment Violation, and his rights were violated under the First Amendment because he regularly had to eat in filthy conditions and he is "an observing Jew." *Id.*

In his fourth claim, Plaintiff alleges several different violations of his Eighth Amendment rights. *Id.* at 14-18. First, Plaintiff alleges that on March 15, 2013, he was denied medication and had a seizure that lasted from 10:15 p.m. until 3:00 a.m. *Id.* at 14. After the seizure, Plaintiff alleges he "was violently attacked, being pressed into his bunk, then dragged off" which caused his head to "crack" on the floor. *Id.* Plaintiff maintains that Lt. Troy Johnson was in charge of the "brutal attack," and he video-taped it. *Id.* After the attack, Plaintiff alleges that he was taken into an observation room where he did not receive medical attention for over three hours. *Id.* At approximately 7:00 a.m., Plaintiff represents that Physician Assistant Arunava Saga[3] gave him a medical assessment. *Id.* at 14-15.

Plaintiff alleges that on March 16, 2013, Officer Brendon Burkett denied him water and refused to remove the toilet bucket while Plaintiff ate in Observation cell #2. *Id.* at 15. Plaintiff maintains that "[a]s an observing Jew, one of the tenets of the Torah is to eat in a clean place." *Id.* Additionally, Plaintiff alleges that he was handcuffed for over 20 minutes while an officer sat on Plaintiff's cuffed hands. *Id.* at 17. Plaintiff maintains that Lt. Jordan

---

[3] This Defendant's correct name is Arunava Saha. *See* Saha Decl., ECF No. 117-25.

Hollett, Officer William Reese, and the two John Doe Officers ignored his cries to stop and his screams of pain. *Id.* Plaintiff maintains that "[t]he pain was unbelievable, causing [his] wrist to be permanently scarred, bruised, and at that time to bleed severely with serious amounts of blood to flow from [his] wrist." *Id.* Plaintiff alleges that this torture occurred again on March 26, 2013, by Lt. Jordan Hollett and two [John] Doe Officers. *Id.* Plaintiff alleges that Lt. Negron Oliver denied him a medical assessment. *Id.* Plaintiff alleges that he was treated inhumanely for sixteen days by officers when he was left in a dry cell with no water, shower, or a flushable toilet, and he was tortured "by having [his] cuffed hands sat upon for over 20 minutes for two (2) nights." *Id.* at 16. Plaintiff alleges on April 9, 2013, he was found not guilty by a disciplinary hearing officer ("DHO") on an incident report filed by Lt. Johnson. *Id.*

In his fifth claim, Plaintiff alleges that his *Miranda* rights were violated on September 21, 2011, when agents questioned him about the whereabouts of his mother and accused him of killing her. *Id.* at 18-19. Plaintiff maintains that two Baltimore County Homicide Squad Detectives and two FBI agents questioned and threatened him. *Id.* at 19. In his sixth claim, Plaintiff alleges that on January 29, 2013, Correctional Officer Tony Thompson handcuffed him and took him in for questioning by the FBI agents and Baltimore County Homicide Officers. *Id.* at 19-20. Plaintiff maintains that he was eventually led back to his cell after repeated questions and threats. *Id.* at 20.

In his seventh claim, Plaintiff maintains his due process rights were violated. *Id.* at 21. Specifically, he alleges that Defendants Daniel Trent and Dewick Bryant kept him "on the same D range in SHU with [Inmate] Burns" despite telling him on August 19, 2012, that they would keep him far away from Inmate Burns. *Id.* Plaintiff maintains that he "filed a

written request to Associate Warden of Programs Daniel Fallen, asking him to remove [Plaintiff] from the range where the person who had sexually assaulted [him] was confined," but his request was ignored. *Id.* Plaintiff represents that he filed similar requests to SHU Lt. Troy Johnson and Lt. Dewick Bryant, but both requests were ignored. *Id.* (citing Exhibits 21, 22, 28). Plaintiff alleges that he heard Officer Brendon Burkett, who was responsible for cell rotations, talk to Inmate Burns and promise him to bring Burns closer to Plaintiff, the "Russian." *Id.* at 22. Plaintiff maintains that Inmate Burns was eventually moved into a cell across from him. *Id.* Plaintiff maintains that on August 30, 2012, he was taken out of his cell for "recreation" but instead was taken to what was supposed to be a psychotherapy session with Defendant Daniel Trent. *Id.* Plaintiff maintains that he did not receive "any kind of psychotherapy" but was yelled at by Trent and so Plaintiff asked to end the session. *Id.*

In his eighth claim, Plaintiff maintains "Unlawful Registration under Adam Walsh Act ['AWA']." *Id.* at 23. Plaintiff alleges that he was never convicted of a sex crime and a case manager "unlawfully kept 'sex offender' public safety factor on Plaintiff's inmate record/Team paperwork." *Id.* Plaintiff represents that he became aware of the AWA on July 18, 2013. *Id.* Plaintiff argues that he was transferred to FCI Edgefield without his record ever being cleaned. *Id.* Plaintiff alleges that his case managers have ignored his requests for the sex offender status to be removed from his record. *Id.* at 24.

In his ninth claim, Plaintiff alleges that his Fifth Amendment Due Process rights were violated when he was found guilty of fighting by a DHO. *Id.* at 25. Plaintiff alleges that the "unlawful actions of the DHO resulted in his loss of good conduct time and other privileges." *Id.*

In his tenth and final claim, Plaintiff alleges that he was denied recreation without reason or provocation on eleven occasions by four correctional officers. *Id.* at 26-27. Plaintiff alleges that these denials of recreation amount to cruel and unusual punishment and violate the Eighth and Fourteenth Amendments to the Constitution. *Id.*

Plaintiff seeks $350,000 in compensatory damages and $350,000 in punitive damages from each Defendant. *Id.* at 31. Additionally Plaintiff seeks injunctive relief and requests that the court issue an order for Plaintiff to be moved out of Bureau of Prisons ("BOP") to a United States Marshal's facility. *Id.*

II.      Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).  Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of

evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.     Analysis

Defendants make several arguments in their Summary Judgment Motion. The undersigned will address each argument in turn.

A.     Subject Matter Jurisdiction

Defendants maintain that the court lacks subject matter jurisdiction over Plaintiff's claims against Defendants in their official capacities. ECF No. 117 at 4-5. In his Response, Plaintiff maintains that official capacity is not an affirmative defense and that certain Defendants "forgot" their official capacities and acted like individuals rather than officials. ECF No. 122 at 8-10. The undersigned recommends granting Defendants' Motion and dismissing Defendants in their official capacities.

Plaintiff is bringing suit against employees of a federal prison; as such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory

authorization for such suits. *Carlson v. Green,* 446 U.S. 14, 18 (1980); *see also Holly v. Scott,* 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. However, federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. *See Harlow v. Fitzgerald,* 457 U.S. 800, 814-20 (1982). Nevertheless, *Harlow* and progeny indicate that case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan,* 511 U.S. 825 (1994); *Bolin v. Story,* 225 F.3d 1234, 1241-42 (11th Cir. 2000); *Campbell v. Civil Air Patrol,* 131 F. Supp. 2d 1303, 1310, n.8 (M.D. Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

*Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities; under *Bivens* inmates may not assert claims against the government or prison officials in their official capacities. *See FDIC v. Meyer,* 510 U.S. 471, 475, 484-86 (1994); *Berger v. Pierce,* 933 F.2d 393, 397 (6th Cir. 1991); *Reinbold v. Evers,* 187 F.3d 348, 355 n.7 (4th Cir. 1999.) Accordingly, the undersigned recommends that Plaintiff's allegations against Defendants in their official capacities be dismissed.

B.      Personal Jurisdiction

Defendants argue that this court does not have personal jurisdiction over Scott Duffey, Raymond Kelso, Veronica Hnat, Kevin Klimko, James Johnson, Caroll Bollinger, Michelle Picerno, and Mr. Nichols. ECF No. 117 at 5-6. As previously mentioned, these individuals were dismissed, never served, and are not parties to this action. *See* ECF Nos. 36, 69.

C.      Failure to Exhaust

Defendants maintain that Plaintiff has failed to exhaust his administrative remedies on any allegation in his Complaint. ECF No. 117 at 10-14. Accordingly, Defendants argue that none of the issues raised in Plaintiff's Complaint are ripe for adjudication and his Complaint should be dismissed. *Id.* at 14.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to properly exhaust available administrative remedies prior to filing an action challenging his conditions of confinement. 42 U.S.C. § 1997e(a) (2006); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (requiring "proper" exhaustion of administrative remedies); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (discussing "availability" of remedies). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Pursuant to § 1997e(a), the exhaustion requirement is applicable to *Bivens* claims. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Because the prison employees bear the burden on exhaustion in this case, *see Bennette*, 517 F.3d at 725, they must show that the evidence is so one-sided that no reasonable factfinder could find that a plaintiff was prevented from exhausting his administrative remedies. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In response to the court's special interrogatories and in his Response to Defendants' Motion, Plaintiff maintains that he "made all reasonable attempts to obtain administrative remedy for [his claims]; [h]owever, [his] B Unit [] Team at FCI Edgefield [] used a number

of obstructionist tactics to prevent Plaintiff from obtaining it, the main of them being simply coming to Special Housing Unit every time without any administrative remedy [forms]." ECF No. 32 at 3. In his Response to Defendants' Motion for Summary Judgment, Plaintiff maintains that staff continued to come to SHU without any forms. ECF No. 122. Defendants argue that certain officers made regular visits to the SHU and if Plaintiff had requested forms they would have been provided. The undersigned finds that whether Defendants hindered Plaintiff's efforts to exhaust his administrative remedies remains a question of fact. Therefore, the undersigned will address Plaintiff's causes of action on the merits.

D.      First Amendment/Freedom of Religion Cause of Action

Defendants argue that Plaintiff's cause of action for a First Amendment violation when certain Defendants refused to "remove the feces bucket when he had lunch" should be dismissed because Plaintiff failed to present a claim upon which relief may be granted. ECF No. 117 at 58-60.

The First Amendment protects an individual's right to the free exercise of religion. U.S. Const. amend I. Although incarcerated, a prisoner still "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Plaintiff must satisfy two threshold criteria to merit protection under the Free Exercise Clause of the First Amendment. First, Plaintiff must allege that his belief or beliefs are sincerely held. *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972). Second, Plaintiff also must demonstrate that his claim is rooted in "religious" and not "purely secular" philosophical concerns. *Id.; see Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 713-14

(1981) ("Only beliefs rooted in religion are protected by the Free Exercise Clause, which by its terms, gives special protection to the exercise of religion.").

Once an inmate has established that his beliefs merit protection as a religion, the inmates' constitutional rights must be evaluated within the context of their incarceration. The Supreme Court has emphasized that "when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *accord, Dettmer v. Landon*, 799 F.2d 929 (4th Cir. 1986), *cert. denied*, 483 U.S. 1007 (1987). A regulation that impinges on a prisoner's federal constitutional rights, including his sincere desire to practice a religion, may be valid upon a showing that the restriction is reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Here, Plaintiff maintains that he is an "observing Jew" and "one of the tenets of the Torah is to eat in a clean place." ECF No. 1 at 15. Therefore, Plaintiff maintains that having to eat in a cell with a portable urinal violates his First Amendment rights. *See id.* However, the undersigned finds that Plaintiff's constitutional rights were not violated. Plaintiff was an inmate in maximum security when he was placed in an Observation Cell in the SHU. The Supreme Court has stated that prisoners maintain the right to follow their religion, so long as their religious practices could be reasonably accommodated by prison officials. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, when those practices conflicted with security concerns, the "legitimate penological objectives" should control. *Id.* at 353.

According to a Declaration from Starklin Smith, "[i]nmates housed in the Observation Cell [] receive a portable urinal and basin (bedpan) to relieve themselves of bodily fluids." ECF No. 117-28 at ¶ 5; see also 117-29 at ¶ 6. Therefore, the rules concerning observation cells apply equally to all inmates, and the BOP policy is neutral. Furthermore, Defendant Smith attests "[e]ach time the inmate uses the bed pan, it is removed and staff issues a clean bedpan immediately, [and Plaintiff] had discretion to use the portable urinal and basin as needed and could have chosen not to use it before or during mealtimes in order to observe his religious practice." *See id.* Moreover, courts afford deference to prison officials in the administration of prisons, particularly when, as is the case here, the inmates being dealt with are inmates in administrative segregation or "lock-up." *Hughes v. Rowe,* 449 U.S. 5, 20 (1980); *Torcasio v. Murray,* 57 F.3d 1340, 1355 (4th Cir. 1995); *cert. denied,* 516 U.S. 1071 (1996); *see also Sweet v. South Carolina Department of Corrections,* 529 F.2d 854, 859 (4th Cir. 1975) (recognizing federal court's deference to prison administrators on all administrative matters unless the condition rises to the level of a constitutional violation).

This court's review of all of the facts indicates that the Defendants' BOP policy should be upheld as it was reasonably related to a legitimate penalogical interest. In the present case, there is a rational relationship between the regulation and the legitimate government interest advanced. Moreover, the regulation was also applied properly in this action, and Plaintiff could have chosen to observe his religious practice and abstain from using the bedpan immediately before or during mealtimes. Accordingly, the undersigned recommends granting Defendants' Motion and dismissing Plaintiff's cause of action for a First Amendment Violation.[4]

---

[4] Plaintiff also alleged a First Amendment violation related to a 2011 News release. ECF No. 1 at 10. Plaintiff asserts he "became objectively aware of violation of [his] 'Lamps Lights

E.     Due Process Violation

Defendants maintain that Plaintiff's purported causes of action concerning violations of his due process rights should be dismissed because "regulations relating to inmate housing assignments, classification records, and recreation times are all set forth in BOP policy and do not rise to the level of due process rights." ECF No. 117 at 61.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "In determining whether state officials have deprived an inmate, [] of a procedurally protected 'liberty,' this Court traditionally has looked either (1) to the nature of the deprivation (how severe, in degree or kind) or (2) to the State's rules governing the imposition of that deprivation (whether they, in effect, give the inmate a 'right' to avoid it)." *Sandin v. Conner*, 515 U.S. 472, 493 (1995). "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

In his Complaint, Plaintiff alleges that Defendants D. Bryant, J. Bryant, and Collie violated his due process rights by failing to remove him from a cell where he was being housed with Inmate Burns in May and June of 2012. ECF No. 1 at 10-13. Additionally, Plaintiff alleges that Defendants Fallen, Trent, D. Bryant, and T. Johnson violated BOP "Program Statement 5324(a)(b) (Sexually Abusive Behavior Prevention Program)" by placing him in the same SHU range with inmate Burns in August 2012. *Id.* at 21-22. Plaintiff also alleges that while incarcerated in New York, he was designated as a sex offender and

Laws' rights" on October 27, 2013, while confined in Terre Haute. *Id.* Defendants did not address this claim, and Plaintiff did not allege any facts against the remaining Defendants. Accordingly, this claim should be dismissed for failure to state a claim upon which relief can be granted.

later he became aware of the Adam Walsh Act ("AWA") and under the Act, he does not meet the criteria for a "sex offender." *Id.* at 23. Plaintiff maintains that Defendants refused to remove seven (7) points from his custody classification for a detainer that he claims did not exist. *Id.* at 23-24. Plaintiff also alleges that on September 10, 2012, he was found guilty of fighting, but the aggressor was found not guilty. *Id.* at 25. Finally, Plaintiff maintains that Defendants Ratley, W. Johnson, T. Johnson, Coleman, and Reid violated his Due Process rights and BOP policy by denying him access to recreation time in SHU. *Id.* at 26-27.

None of Plaintiff's allegations implicate a due process violation and fail as a matter of law. Due process allows an individual certain rights before a liberty or property interest is taken away. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974) (holding an inmate is entitled to the following: (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) written findings as to the evidence relied upon and reasons for the disciplinary action; and (3) the right to call witnesses and present evidence in his defense, provided there is no undue hazard to institutional safety or correctional goals). Here, Plaintiff's allegations concerning his prison classification or placement near or in the same cell as Inmate Burns do not implicate a constitutional claim because Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. *See Olim v. Wakinekona,* 461 U.S. at 250-51 (noting inmates have no due process right to choose their specific place of confinement); *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."). Plaintiff's allegation that he was wrongly designated as a "sex

offender" under the AWA also fails for several reasons. First, Plaintiff's claim of wrongful designation occurred in New York and does not concern the current Defendants. Next, Plaintiff has presented no evidence that New York designated him as a sex offender pursuant to the AWA's criteria.

Additionally, Plaintiff's allegations concerning the disciplinary conviction fail as a matter of law because Plaintiff is merely alleging that the outcome of the disciplinary proceeding was incorrect—he does not allege that he was deprived of certain rights, like notice of the charges against him or of the right to present evidence. Therefore, under *Wolff*, these allegations fail as a matter of law. Similarly, Plaintiff does not have a liberty or property right in his recreation time. *Gethers v. Van Doran*, No. 9:08-3483-HFF-B, 2009 WL 2900757, at *6 (D.S.C. Sept. 9, 2009) ("As for Plaintiff's claim that he has suffered a loss of certain privileges, such as having no television to watch or everyday recreation, due to his having been placed in maximum security, this general and conclusory allegation again fails to provide any evidence of a constitutional violation."). Therefore, a claim that restricted recreation violates his due process rights fails as a matter of law.

Accordingly, the undersigned recommends granting Defendants summary judgment on Plaintiff's due process claims.

F.     *Miranda* Violation Allegation

The two remaining Defendants involved in Plaintiff's *Miranda* claim are Defendants Vining and Thompson. Defendants argue that Plaintiff's purported claim against them fails because he "merely states that Defendant Vining asked to see him and Defendant Thompson escorted him to the SHU Lieutenant's Office to meet with Baltimore County Police and the named FBI agents." ECF No. 117 at 64. The undersigned agrees.

The Baltimore County Police and FBI agents allegedly involved in Plaintiff's interrogation in violation of his *Miranda* rights are not parties to this action. *See* ECF Nos. 36, 69. The allegations against the remaining two Defendants allegedly involved in the incident do not rise to a constitutional violation. Therefore, the undersigned recommends that Plaintiff's *Miranda* claim, claim three, be dismissed for failure to state a claim upon which relief can be granted.

G.    Eighth Amendment Allegations

Plaintiff makes several allegations that Defendants violated his Eighth Amendment rights. Defendants address each allegation in turn. ECF No. 117 at 65-85.

1.    Deliberate Indifference to Medical Needs

Defendants maintain that Plaintiff's allegations of medical indifference should be dismissed because he does not have any proof that he experienced a serious medical need, other than unsupported conclusory statements. ECF No. 117 at 67. Furthermore, Defendants argue that Plaintiff cannot demonstrate that Defendants acted with deliberate indifference to any of his needs. *Id.* at 69. In response, Plaintiff maintains that he was expressly denied a medical assessment the morning of March 27, 2013, after being placed in an observation cell. ECF No. 122 at 23. Additionally, Plaintiff maintains he suffered more than minor injuries to his left wrist. *Id.* at 25.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. at 832-35; *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Deliberate indifference to a serious medical need

requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846.  An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.  In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Id.* The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).  A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In his Complaint, Plaintiff alleges that on March 15, 2013, he was denied medication and had a seizure that lasted from 10:15 p.m. until 3:00 a.m. ECF No. 1 at 14. After the seizure, Plaintiff alleges he "was violently attacked, being pressed into his bunk, then dragged off" which caused his head to crack on the floor. *Id.* Plaintiff maintains that Defendant Troy Johnson was in charge of the brutal attack and he video-taped it. *Id.* After the attack, Plaintiff alleges that he was taken into an observation room where he alleges that he did not receive medical attention for over three hours. *Id.* At approximately 7:00 a.m., Plaintiff represents that Physician Assistant Arunava Saha gave him a medical assessment. *Id.* at 14-15.

The undersigned finds that Plaintiff has failed to allege or offer any evidence that would support a finding that Defendants intentionally or recklessly disregarded Plaintiff's medical needs or delayed Plaintiff's access to medical care. Though Plaintiff claims to have suffered a prolonged seizure, there is no evidence that he experienced one. Further, according to his own allegations and the record before the court, Plaintiff was examined by Defendant Saha on March 16, 2013. Defendants have submitted Plaintiff's BOP Health Services Clinical Encounters and a Declaration from Defendant Saha along with and in support of their Motion. *See* ECF No. 117-12, 117-25. In her Declaration, Defendant Saha represents that she completed an injury assessment of Plaintiff at approximately 7:30 a.m. on March 16, 2013. ECF No. 117-25 at ¶ 3. Defendant Saha avers that Plaintiff "expressed anger and hostility during the medical examination but was found to be alert and oriented." Additionally, according to her Declaration, other than reporting he had injuries to the left side and back of his scalp, Plaintiff "did not express any other complaints, request any medication, or report that he had experienced a seizure the previous evening." *Id.* Furthermore, Defendant Saha attests that Plaintiff "received a proper evaluation and did not have any serious medical needs that demonstrated a life-threatening injury or posed a risk of needless pain or lingering disability if not treated." *Id.*

Plaintiff's March 16, 2013 Health Services Clinical Encounter reflects that Plaintiff did not report nor were there any signs or symptoms of a seizure. Rather, the encounter indicates, as reported by inmate: "I have injuries on left side of my face and back of my scalp." ECF No. 117-12 at 58. Plaintiff's pain scale was noted as 1, and the medical examination revealed "[e]rythema noted at left side of face, lateral left eye [and] [n]o other external injuries, hemorrhage or discharge noted at this time of examination." *Id.* Defendant

Saha examined the back of Plaintiff's head but found no injuries. ECF No. 117-25 at ¶ 3. Defendant Saha assessed Plaintiff with temporary/acute Erythema and counseled Plaintiff on the application of ice to the redness on his face. ECF No. 117-12 at 59. Other than his own allegations, there is no evidence that Plaintiff suffered a prolonged seizure on March 16, 2013. Moreover there is no evidence that any Defendant was aware that Plaintiff was having a seizure and let it continue without medical treatment or denied him treatment post-seizure.

Plaintiff maintains that he was expressly denied a medical assessment in the morning of March 27, 2013. ECF No. 122 at 23. Medical records indicate that Plaintiff was assessed and treated for a pseudo-seizure on March 26, 2013. ECF Nos. 117-12 at 73-74; 117-25. In her Declaration, Defendant Saha indicates that on March 26, 2013, she observed Plaintiff make "short, jerky movements of body while lying face down on the floor." ECF No. 117-25 at ¶ 4. Thereafter, Defendant Saha represents that Plaintiff was immediately placed on a mattress to prevent any injuries and observed by medical staff and the Clinical Director for an hour and 15 minutes. *Id.* After the episode, Defendant Saha attests that she diagnosed Plaintiff with a pseudo-seizure and gave him a shot of Lorazepam, after which his condition improved right away. *Id.* Furthermore, Defendant Saha represents that Plaintiff's "[p]seudo-seizure did not constitute a serious medical need or life-threatening injury or condition." *Id.*

A March 25, 2013 medical encounter indicates that Plaintiff had a medical evaluation after he stated "I want to kill my self (sic) [and,] I want to kill my self (sic) I'm going to flood this cell." ECF No. 117-12 at 70. However, Plaintiff's March 25, 2013 medical assessment revealed "[n]o injury or trauma found, inmate has some redness left forearm dry skin possible rash, no bleeding or abrasion or laceration were found. Inmate was place (sic) in suicide watch at HSU." *Id.* Plaintiff was evaluated by medical staff again on March 26,

19

2013, and staff noted that "[o]n arrival, inmate was observed to have [] short jerky movements of body while lying face down on the floor. Immediately, inmate was placed on the mattress to prevent any injuries." *Id.* at 73. The medical encounter indicates that Plaintiff was observed for 1 hour and 15 minutes, and Plaintiff received a 1 mg injection of Lorazepam. *Id.* at 74. In a later medical encounter note from March 26, 2013, Plaintiff refused to tell medical staff of the cause of any injuries. *Id.* at 76. There, medical staff "[n]oted old scab at left lateral wrist/hand open up and began bleeding. Area cleansed and bleeding had stopped" prior to being placed in Observation Cell. *Id.* Medical staff observed "purplish, bruising at upper arms, and old healed scars at upper extremities [but] no other apparent injuries [were] noted." *Id.*

The undersigned finds that the record does not contain facts that demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Rather, the record demonstrates that FCI-Edgefield medical personnel were aware of each of Plaintiff's medical conditions and treated them. Moreover, medical records demonstrate that Plaintiff has was seen approximately 34 times between July 15, 2012, and May 8, 2013. *See* ECF No. 117-12. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claims.

### 2.     Failure to Protect

Defendants maintain that Plaintiff's causes of action for failure to protect should be dismissed because there is no evidence that Defendants received Plaintiff's alleged requests to staff notifying them of Inmate Burns' drug abuse, threats, and sexually charged language. ECF No. 117 at 72. Therefore, Defendants argue that "Defendants D. Bryant and J. Bryant did not violate [Plaintiff's] constitutional rights by failing to remove [Plaintiff] from his cell

assignment prior to the alleged sexual assault as they had no knowledge of any substantial risk of harm." *Id.* at 72-73. In Response, Plaintiff maintains that he suffered emotional and mental trauma, and the trauma is directly connected to the physical trauma he suffered from the alleged rape. ECF No. 122 at 33. Additionally, Plaintiff argues that J. Bryant's Declaration, Exhibit 4;  Dewick Bryant's Answers to Interrogatories Set 1, Exhibit 8; and Plaintiff's Requests to Troy Johnson, Exhibit 5, create jury questions. *Id.* at 35. Additionally, Plaintiff maintains that these Exhibits "cast[] doubts as to integrity of staff members of FCI Edgefield and key players in this very lawsuit." *Id.* Further, Plaintiff contends that Exhibits 6 and 7 demonstrate Plaintiff's efforts against being on same range with Inmate Burns, and "all those requests were ignored." *Id.* at 36. Plaintiff maintains that "earlier filed evidence" proves that "defendants failed to act reasonably in response to the risk of which they had actual knowledge." *Id.* Moreover, Plaintiff argues that Defendant J. Bryant ignored his request for a BP-8 grievance form in order to start the grievance procedure. *Id.* at 37.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned," *Williams,* 77 F.3d at 761, and imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. at 833 (citation omitted). To establish a claim for failure to protect from violence, an inmate must show: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," *Id.* at 834, and (2) that the prison officials had a "sufficiently culpable state of mind." *Id.* (internal citations and quotations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (internal citations omitted). "To be deliberately indifferent, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Defendants John Bryant, Dewick Bryant, Daniel Fallen, and Charles Collie offer Declarations in support of Defendants' Motion for Summary Judgment on Plaintiff's failure-to-protect claim. ECF Nos. 117-4; 117-14, 117-17. Defendants attest that they were not aware of any specific threat made against Plaintiff. ECF Nos. 117-4 at ¶ 3; 117-14 at ¶ 3; 117-17 at ¶ 2. Defendant John Bryant avers that "the first time [he] heard about any issues of inappropriate sexual behavior by inmate Burns against [Plaintiff] was after both inmates were placed in the [SHU] following allegations that [Plaintiff] hit inmate Burns over the head with a combination lock on July 15, 2012." ECF No. 117-4 at ¶ 3. Defendant Dewick Byant attests that "[o]n July 19, 2012, while he was in [SHU, Plaintiff] sent [him] a Cop-out alleging that he was raped by inmate Burns on July 15, 2012, at approximately 12:30 pm." ECF No. 117-14 at ¶ 4; *see also* ECF No. 117-17 at ¶ 4; ECF No. 117-21 at ¶ 5. Thereafter, Defendant D. Bryant represents that he "immediately notified Psychology Services, the Captain, and the Health Services Unit regarding [Plaintiff's] sexual assault allegations. The SIS Department initiated the Sexual Abuse Protocol, opened an investigation into [Plaintiff's] allegations, and referred [Plaintiff] for a psychology evaluation and a sexual assault examination at a local hospital." *Id.* After he was seen at an outside hospital, Defendant D. Bryant attests that a rape examination kit revealed no evidence of any injuries or trauma. ECF No. 117-14 at ¶ 6. Furthermore, according to Defendant D. Bryant's Declaration, "[b]ased on the lack of physical evidence and the SIS investigation, [Plaintiff's] allegations of sexual assault by inmate Burns were unsubstantiated, [and] the SIS Department recommended transferring both [Plaintiff] and inmate Burns to different BOP facilities . . . ." *Id.* at ¶ 8.

Upon review of all evidence in the record, the undersigned finds that other than his own allegations Plaintiff has offered no evidence that indicates he was raped or that he notified any Defendant prior to the alleged rape of Inmate Burns' alleged sexually charged language towards him. As attachments to his Complaint, Plaintiff submitted several "Inmate Request to Staff" Forms. *See* ECF Nos 1-3, 1-4. Additionally, Plaintiff submitted several hand-written Inmate Request Forms with his Response. *See* ECF No. 122-1. However, these forms lack authenticity, and there is no indication that Plaintiff submitted these forms to BOP staff. Accordingly, the undersigned will not consider any unauthenticated forms submitted by Plaintiff as evidence. *See Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993) (finding that the district court did not err in refusing to consider unauthenticated documents during summary judgment because Rule 56 allows "a district court to ascertain, through criteria designed to ensure reliability and veracity, that a party has real proof of a claim before proceeding to trial"). The *Orsi* court held: "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." 999 F.2d at 92. Other than these forms and his own allegations, Plaintiff submits no evidence demonstrating that he put any Defendant on notice that his prison conditions posed any harm because of Inmate Burns. Therefore, there is no genuine issue of fact that any Defendant was on notice that Plaintiff was incarcerated in conditions posing a substantial risk of serious harm. Accordingly, the undersigned recommends granting Defendants' Motion for Summary Judgment on Plaintiff's failure-to-protect cause of action.[5]

---

[5] Plaintiff's allegations that Inmate Burns bought drugs from certain Defendants and habitually used drugs does not rise to a level of a constitutional violation. Therefore, the undersigned recommends this purported cause of action for drug use be summarily dismissed. To the extent this allegation should be addressed on the merits, the undersigned finds there is no evidence, other that Plaintiff's conclusory allegations, of inmate Burns' drug use or that certain Defendants sold drugs to Burns or ignored the sale of drugs.

3.    Conditions of Confinement-Drinking Water, Dry Cell, Sanitation

Defendants maintain that they did not subject Plaintiff to unconstitutional conditions of confinement during his time in the Observation Cell. ECF No. 117 at 74-78. In his Response, Plaintiff argues that "[a]s for filthy conditions in Observation, Supreme Court long held that it is the objective seriousness of the conditions, and not their effect on the prisoner, that determines their lawfulness." ECF No. 122 at 33.

In his Complaint, Plaintiff alleges that while he was housed in an observation cell he endured extreme and torturous conditions including lack of drinking water or a flushable toilet. *Id.* Additionally, Plaintiff alleges that on March 16, 2013, Officer Brendon Burkett denied him water and refused to remove the toilet bucket while he ate in Observation cell #2. *Id.* at 15. Specifically, Plaintiff alleges that he was treated inhumanely for sixteen days by officers when he was left in a dry cell with no water, shower, or a flushable toilet. *Id.* at 16. Defendants maintain that Plaintiff "was placed in the SHU Observation Cell, which is a more restrictive environment in the SHU, based on his disruptive behavior." ECF No. 117 at 75. Specifically, Defendants represent and the evidence demonstrates that Plaintiff "was placed in the Observation Cell in the SHU from March 16-21, 2013, March 22-25, 2013, March 26, 2013, and March 27-28, 2013, due to his disruptive behavior in his SHU cell, refusing to follow staff orders, and assaulting staff." *Id.* at 76; 117-22; 117-24; 117-28; 117-29; 117-30; 117-32; 117-33; 117-34. Additionally, Defendants represent and the evidence demonstrates that Plaintiff was moved from the Observation Cell to the Suicide Watch Room in Health Services on March 21, 2013, March 25, 2013, and March 26, 2013, after he threatened to kill himself. *See id.*

24

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference—that is, the prisoner must show the officials acted with more than mere negligence but less than malice. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. at 835–37. For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 F. App'x. 348, 353 (4th Cir. 2012).

Under this Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care. . . ." *Farmer*, 511 U.S. at 832. Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim."). "In order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

The evidence demonstrates that Plaintiff was not denied drinking water while he was housed in the SHU Observation Cell or the Suicide Watch Room, though neither place has

running water. However, Plaintiff was offered drinking water at mealtimes and other times throughout the day. *See* ECF Nos. 117-24 at ¶ 7; 117-28 at ¶¶ 3-4; 117-29 at ¶ 4; 117-30 at ¶ 4; 117-32 at ¶ 3; 117-33 at ¶ 3; 117-34 at ¶ 3. No evidence supports an allegation that Plaintiff was denied drinking water for a prolonged period of time. Rather, Plaintiff was restricted only from having unlimited access to water. Therefore, Plaintiff's allegation that he was denied drinking water does not rise to the level of a constitutional violation. *See e.g., Rish v. Johnson,* 131 F.3d 1092, 1096 (4th Cir. 1997) ("Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."); *Gibert v. Anderson Cnty. Sheriff's Office*, No. 0:06-1853-DCN-BM, 2007 WL 328840 (D.S.C. Feb. 5, 2007) ("The mere fact that Plaintiff did not have running water in his cell for a period of time does not amount to a constitutional violation.").

Plaintiff's claim that his Eighth Amendment rights were violated because he was forced to live without a flushable toilet or shower does not amount to a constitutional violation. *See*

*Hooks v. Chapman*, No. 0:12-2416-GRA-PJG, 2012 WL 6674494 (D.S.C. Nov. 30, 2012) *report and recommendation adopted*, 0:12-CV-02416-GRA, 2012 WL 6674491, at *1 (D.S.C. Dec. 21, 2012) (holding that plaintiff's claim that he was only temporarily denied access to a bathroom and had to wait for a clean jumpsuit, while undoubtedly uncomfortable, did not rise to the level of an Eighth Amendment violation. Plaintiff's claim cannot be said to be a "severe or prolonged" deprivation of a basic human need). Therefore, Plaintiff's claim fails to state a cause of action for an Eighth Amendment violation.  Similarly, Plaintiff's claim that his Eighth Amendment rights were violated because he was forced to go without a shower while housed in the Observation cell is without merit. The law is clear that bathing

opportunities may be severely reduced or curtailed without violating an inmate's Eighth Amendment rights. *See, e.g., Shakka v. Smith,* 71 F.3d 162, 168 (4th Cir. 1995) (finding inmate's constitutional rights were not violated when he was not given access to shower for three days); *Davenport v. DeRobertis,* 844 F.2d 1310, 1316–17 (7th Cir. 1988) (holding that restricting inmates in segregated confinement to one shower per week did not violate their constitutional rights). Therefore, the undersigned recommends dismissing Plaintiff's cause of action for denial of access to showers as it does not rise to the level of a constitutional violation.

Finally, there is no evidence to support Plaintiff's claim that his Eighth Amendment rights were violated because he was forced to live in an unsanitary cell for a prolonged period of time. The evidence demonstrates that when needed, Defendants provided Plaintiff with a portable urinal and disposable basin for use. *See* ECF Nos. 117-24 at ¶¶ 8-9; 117-28 at ¶ 5; 117-29 at ¶¶ 5-7; 117-30 at ¶¶ 4-5; 117-32 at ¶ 4; 117-33 at ¶ 4; 117-34 at ¶ 4. Additionally, the evidence demonstrates that once Plaintiff used the portable urinal and disposable basin, the urinal and/or basin was removed and clean one was issued. *See id.* Therefore, the undersigned recommends granting Defendants' Motion for Summary Judgment on Plaintiff's cause of action for an Eighth Amendment Violation for unsanitary prison conditions.

4.      Recreation

Defendants argue that Plaintiff's claims regarding a constitutional violation for denial of recreation should be dismissed because Plaintiff has failed to offer evidence that Defendants' actions amounted to cruel and unusual punishment. ECF No. 117 at 79-80.

As previously stated, in order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need;

and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams*, 952 F.2d at 824. The Fourth Circuit has held that in order to sustain a § 1983 claim for lack of exercise, a plaintiff must produce evidence that he has sustained "a serious or significant physical or emotional injury as a result of these conditions." *Strickler*, 989 F.2d at 1381. Furthermore, the Fourth Circuit has distinguished exercise from recreation. *Strickler*, 989 F.2d at 1381 n. 7 ("We, like the district court, consider whether Strickler was denied exercise. Notably, however, as the district court emphasized, Strickler does not even specifically allege that he was deprived of such a right [but instead claimed he was being denied 'adequate recreation']."). "Lack of exercise may rise to a constitutional violation in certain limited circumstances 'where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened.'" *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)).

Plaintiff alleges that he was deprived recreation opportunities on a number of occasions between July and September of 2012. ECF No. 1 at 26-27. However, Plaintiff has failed to allege or demonstrate that Defendants acted with deliberate indifference to his rights. In support of their Motion for Summary Judgment, Defendants have attached a Special Housing Unit Record which indicates whether Plaintiff was seen by medical services, when he received meals, and whether he used recreation time for specific dates. ECF No. 117-23. The log indicates an "R" for "Refusal" in the recreation column for the following dates:  July 17-20, 24-25 of 2012; August 3, 9, 15, 17, 20-22, 27, and 29 of 2012, and September 18-20, 24, 28 of 2012. Accordingly, the log reflects that Plaintiff refused his opportunity to take recreation and use the time for exercise on the days listed. *Id.* Additionally, the log indicates that recreation was closed for all inmates on the following

dates:  July 23 and 31, 2012, August 10 and 24 2012. *Id.* Declarations from correctional officers also reflect that on the dates Plaintiff alleges he was denied recreation that Plaintiff either refused his opportunity to participate in recreation or that recreation was cancelled for all inmates (with the exception of September 13-14, 2012—dates for which it is unclear whether Plaintiff took or refused his recreation opportunity). ECF Nos. 117-22 at ¶ 3; 117-31 at ¶ 3; 117-37 at ¶ 3.

The only evidence before the court indicates that Plaintiff was afforded adequate opportunities for recreation. Though recreation was not offered on occasion, the Fourth Circuit has held that the restrictive conditions of high security incarceration do not rise to the level of cruel and unusual punishment. *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999) ("These conditions are indeed restrictive, but the restrictive nature of high-security incarceration alone does not constitute cruel and unusual punishment"). The undersigned finds that Plaintiff has failed to offer any evidence of deliberate indifference concerning Plaintiff's denial of out-of-cell exercise nor has Plaintiff demonstrated an extreme deprivation of his rights. Therefore, the undersigned recommends dismissing Plaintiff's conditions of confinement claim for denial of exercise/recreation.

### 5.        Use of Excessive Force

Defendants argue that Plaintiff's claims concerning excessive use of force should be dismissed because Defendants never used forced in a punitive measure. ECF No. 117 at 84-85. Rather, Defendants maintain that any force used was for Plaintiff's own protection, and was "applied with the least amount of force necessary to control the situation." *Id.* at 85. In his Response, Plaintiff maintains that he suffered more than minor injuries such as permanent

scars to his left wrist, bruises, and abrasions. ECF No. 122 at 25. Additionally, Plaintiff argues that if there is a factual dispute over whether force was used against Plaintiff in quelling a disturbance that prison officials are not entitled to summary judgment. *Id.* at 27. Plaintiff further argues that Defendant Hollett "directly participated, as well as ordered, encouraged, and watched without interfering, the constitutional violations in Observation 2." *Id.* at 31. Later in his Response, Plaintiff maintains that he suffered emotional and mental trauma directly connected to his physical traumas related to his alleged rape and the guards' brutality and "filthy conditions" in the Observation cell. *Id.* at 33.

To establish an excessive force claim under the Eighth Amendment, the inmate must demonstrate that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d at 238 (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components. For the subjective component, Plaintiff must prove that Defendants assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal citation omitted). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Id.* at 321.

In his Complaint, Plaintiff maintains he was unlawfully moved into an Observation Room where he remained from May 5 to May 8, 2013, ECF No. 1 at 13. Additionally, Plaintiff maintains that on March 15, 2013, he "was violently attacked, being pressed into his bunk, then dragged off the bunk into the concrete floor, causing his head to resoundly (sic) crack on said floor." *Id.* at 14. Thereafter, Plaintiff maintains he was taken into an Observation Room. *Id.* Plaintiff maintains that on March 25, 2013, officers entered Observation Cell #2 where he was being detained, placed Plaintiff in handcuffs for over 20 minutes, and while he was held down, "an officer sat on [his] cuffed hands." *Id.* at 16-17. Plaintiff alleges that this "torture" happened again on March 26, 2013. *Id.* at 17. Plaintiff maintains that "blood flowed" from his left wrist which caused immense pain, and he was "tortured by having [his] cuffed hands sat upon for over 20 minutes for two (2) nights." *Id.*

Defendants maintain that Plaintiff was placed in an observation cell in the SHU on the following dates due to his disruptive behavior: March 16-21, 2013; March 25, 2013; March 27-28, 2013. ECF No. 117 at 81. Additionally, Defendants represent that Plaintiff was moved from the Observation Room to the Suicide Watch Room in Health Services on the following dates:  March 21, 2013 and March 25-26, 2013. *Id.* According to Defendant Troy Johnson's Declaration, on March 16, 2013, SHU staff used a Force Team to extract Plaintiff from his cell after "he placed a sheet around his bunk to hide himself from view." ECF No. 117-22 at ¶ 4; *see also* ECF No. 117-24 at ¶ 3. Defendant Johnson attests that Plaintiff's actions "threatened the safety and security of the institution." *Id.* Additionally, Defendant Johnson represents that the SHU Staff entered Plaintiff's cell and placed him in hand and leg restraints before escorting him to the Observation Cell #2 without incident. *Id.* Defendant Johnson avers that he did not see Plaintiff's head being banged on the floors, walls, or door

jams during the forced move. *Id.* at ¶ 5. According to his Declaration, the move was documented in writing and by video. *Id.*

After Plaintiff was moved into the Observation Room, according to a Declaration from Gerald Lewis, on March 18, 2013, Plaintiff assaulted a staff member who was trying to apply hand restraints to him so that Plaintiff could be evaluated by Psychology Services staff. ECF No. 117-41 at ¶ 3. Specifically, Defendant Lewis attests that Plaintiff caused a staff member injury "by pulling the restraints and staff member hands and arms into the cell through the food slot." *Id.* According to Lewis's Declaration, Plaintiff refused to submit to restraints, and Plaintiff "busted a shower head" while Defendant Cheek attempted confrontational avoidance techniques to calm Plaintiff down. *Id.* at ¶¶ 3-5. Thereafter, Defendant Lewis attests:

> At approximately 11:10 a.m., I gave [Plaintiff] one last order to submit to restraints, which he refused. I then ordered [a Use of Force Team] into the Observation Cell. [Plaintiff] dropped to the floor as the team entered. [Plaintiff] was placed in restraints and leg irons and taken to another cell by the team. However, [Plaintiff] refused to walk on his own and had to be carried by the team. Medical staff evaluated [Plaintiff] immediately following the Use of Force team and upon his return to the Observation Cell at approximately 12:55 p.m. and found no injuries. Thus, [Plaintiff] was placed in the Observation Cell in the SHU because of his disruptive and destructive behavior.

*Id.* at ¶¶ 5-6.

Plaintiff's last placement (for the time period alleged in this Complaint) in the Observation Cell was from May 5, through May 8, 2013. *See* ECF No. 117-24. Defendant Hollett attests that Plaintiff was moved into the Observation Cell after he covered his SHU cell window and refused requests that he uncover it. *Id.* at ¶ 10. Defendant Hollett avers that he exited the area and upon his return, Plaintiff had uncovered his cell window, and Defendant Hollett ordered Plaintiff to submit to hand restraints. *Id.* When Plaintiff refused,

Defendant Hollett maintains that the food slot was opened, and Plaintiff "threw two cups of a red liquid substance on [Defendant Hollett], covering [his] upper body. *Id.* Thereafter, Defendant Hollett attests that a Use of Force team moved Plaintiff to an Observation Cell for his disruptive behavior. *Id.* Defendant Hollett avers that he did not "push [Plaintiff] down on a bunk, place handcuffs on him and sit on [Plaintiff's] hands, or assist or direct others in doing so." *Id.*

Turning to the events leading to Plaintiff's placement in the Suicide Watch Room, Declarations submitted by Defendants indicate that on March 25, 2013, and March 26, 2013, Plaintiff was handcuffed and moved after threatening suicide. ECF Nos. 117-24, 117-35. Though Plaintiff alleges that Defendants Hollett and Reese and two other officers sat upon on his handcuffed hands causing bleeding, according to officer Declarations, some force was used in an effort to compel Plaintiff's compliance. *See id.* Specifically, on March 25, 2013, at approximately 10:00 p.m., while being housed in the Observation Cell, Defendant Hollett attests that Plaintiff made a threat to harm himself by tying a trash bag around his neck. ECF No. 117-24 at ¶ 4. Thereafter, Plaintiff was placed under Suicide Watch in the Suicide Watch Room in Health Services until he could be evaluated by psychology staff. ECF Nos. 117-16 at 27; 117-19 at ¶ 7, 117-24 at ¶4, 117-35 at ¶ 3. Defendant Hollett and Defendant Reese attest that in the late evening of March 26, 2013, Plaintiff threatened to harm himself again by tying a piece of material around his neck and attaching it to a sprinkler head in the Observation Cell. ECF No. 117-24 at ¶ 6; ECF No. 117-35 at ¶ 4. Consequently, Defendant Reese represents that he assisted in moving Plaintiff to the Suicide Watch Room in Health Services again until he could be evaluated by psychology staff. ECF No. 117-35 at ¶ 4; *see also* ECF No. 117-16 at 28. Defendant Reese avers that when moving Plaintiff to the Suicide

Watch Room, SHU staff held Plaintiff down on the bed and waited for him to become compliant. *Id.* Defendant Reese attests that he did not observe any staff members sit on Plaintiff's handcuffed hands and there was no blood. *Id.*

Considering the first and second *Whitley* factors, the undersigned finds Defendants have presented evidence that demonstrates all Defendants used an amount of force necessary to restore order or to prevent Plaintiff from causing harm to himself or others. The above cited Declarations indicate that from their perspectives, Defendants used force in reaction to Plaintiff's conduct and not to cause Plaintiff harm. Defendants represent that they used force against Plaintiff when he was either non-complaint with certain directives or attempted suicide. Aside from allegations, Plaintiff has presented no other evidence concerning his allegations of excessive force. Therefore, the undersigned finds there was sufficient need for application of force under prong one of *Whitley* based on Plaintiff's aggression towards Defendants, his refusal to obey direct orders, or his threats of suicide. Furthermore, the undersigned finds that a reasonable amount of force was used based on the circumstances of the situation under the second prong of *Whitley*.

Turning to the extent of Plaintiff's injuries under the third prong of *Whitley*, the evidence demonstrates that Plaintiff did not suffer injuries as alleged in his Complaint. According to BOP Health Services Clinical Encounters as submitted by Defendants, no bleeding or other injures were noted to Plaintiff's wrists or as a result from handcuffs. ECF No. 117-12 at 60-84. However, a March 26, 2013, medical encounter indicates: "old scab at left lateral wrist/hand open up and began bleeding. Area cleansed and bleeding had stopped prior to being placed in Observation Cell in HSU." *Id.* at 76. Therefore, the undersigned finds Plaintiff suffered minimal to no injuries when force was used.

Under the final *Whitley* prong, the undersigned finds there was a threat to officer safety due Plaintiff's non-compliance with orders, policies, and procedures. Moreover, the undersigned finds that there was a great threat to Plaintiff's health and safety based on his suicide threats as reasonably perceived by the responsible officials on the basis of the facts known to them. Furthermore, the Fourth Circuit has held that a prison official may use a reasonable amount of force to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984). Therefore, the undersigned finds that Plaintiff has failed to demonstrate that Defendants acted in a malicious manner or for the sole purpose of inflicting pain on Plaintiff. Moreover, the undersigned notes that courts should give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321-22. Accordingly, there is no genuine issue of material fact concerning the incidents described in Plaintiff's Complaint, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claims.

H.    Equal Protection Violation

Defendants argue that Plaintiff's purported claim for an equal protection violation should fail because no evidence "show[s] how he was treated differently than any other inmates who may have been similarly situated or reference the names of the inmates who were treated differently." ECF No. 117 at 87.  The undersigned agrees.

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v.*

*Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* A prisoner can make an equal protection claim if he is singled out as an individual for "arbitrary and irrational treatment," with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. *See Village of Willowbrook v. Olech,* 528 U.S. 562 (2000); *Willis v. Town of Marshall, N.C.,* 426 F.3d 251, 263 (4th Cir. 2005). When equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. *Veney v. Wyche,* 293 F.3d 726, 730–32 (4th Cir. 2002). In such instances, a prisoner claiming an equal protection violation must allege facts demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and the court must determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Id.*

Plaintiff has not offered any evidence that he was treated differently as a result of intentional discrimination. Rather, Plaintiff merely makes bald allegations regarding discrimination without any support which are insufficient to survive summary judgment. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment). Accordingly, the undersigned recommends granting Defendants' summary judgment motion concerning Plaintiff's discrimination claim.

I.     Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 117 at 56-58. The Supreme Court in *Harlow v. Fitzgerald* established the standard

that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

IV.    Conclusion and Recommendation

Accordingly, based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 117, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

August 31, 2015                                    Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**